IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRIGINA

Richmond Division

REVA HELMS,                         )
      Plaintiff,                   )
                             )
      v.                           )          Civil Action No. 3:16cv189 (MHL)
                             )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security, )
      Defendant.                   )
_____)

## REPORT AND RECOMMENDATION

On June 25, 2012, Reva Helms ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act

("Act"), alleging disability from back and left leg pain and high blood pressure. Plaintiff

amended the alleged onset date to March 1, 2013. The Social Security Administration ("SSA")

denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative

Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council

denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the

Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in assessing Plaintiff's mental impairments, in disregarding Plaintiff's

need for a cane, and in assessing the extent of her subjective symptoms of back pain. (Mem. in

Support of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 11) at 3-15.) This matter now

comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)

on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1]
For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary
Judgment (ECF No. 9) and Motion to Remand (ECF No. 10) be DENIED, that Defendant's
Motion for Summary Judgment (ECF No. 13) be GRANTED and that the final decision of the
Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

On June 25, 2012, Plaintiff filed applications for DIB and SSI.  (R. at 180-95.)  The SSA
denied these claims initially on August 31, 2012, and again upon reconsideration on March 22,
2013.  (R. at 72-89, 101-06, 113-18.)  At Plaintiff's written request, the ALJ held a hearing on
August 12, 2014.  (R. at 119-20, 133-53.)  During the hearing, Plaintiff amended her alleged
onset date to March 1, 2013.  (R. at 40-44.)  On October 21, 2014, the ALJ issued a written
opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under
the Act, because Plaintiff could perform work that exists in the national economy.  (R. at 13-24.)
On February 26, 2016, the Appeals Council denied Plaintiff's request for review, rendering the
ALJ's decision as the final decision of the Commissioner subject to review by this Court.  (R. at
1-6.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the
Social Security Administration's disability determination 'when an ALJ has applied correct legal
standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v.*

---

[1]    The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476.  In considering the decision of the Commissioner, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*,

3

780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation).  To summarize, at step one, the ALJ looks at the claimant's current work activity.  § 416.920(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  § 416.920(a)(4)(ii).  Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations.  § 416.920(a)(4)(iii).  Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations.  § 416.945(a).  At step four, the ALJ assesses whether the claimant can perform her past work given her RFC.  § 416.920(a)(4)(iv).  Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy.  § 416.920(a)(4)(v).

### III.    THE ALJ'S DECISION

On August 12, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (R. at 13.)  On October 21, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R. at 24.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim.  (R. at 14-24.)  At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after March 1, 2013.  (R. at 15.)  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: tenosynovitis of the left foot and ankle, status post left posterior tibial tendon debridement with flexus hallucis longus (FHL) transfer and calcaneal osteotomy, and obesity.  (R. at 15.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of

4

impairments that met or medically equalled the severity of one of the listed impairments in 20
C.F.R. § 404, Subpart P, Appendix 1.  (R. at 18.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as
defined in § 404.1567(b) and § 416.967(b).  (R. at 19.)  Plaintiff could never climb ladders, ropes
or scaffolds, and she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps
and stairs.  (R. at 19.)  Plaintiff could not tolerate exposure to hazardous conditions, including
unprotected heights and moving machinery.  (R. at 19.)  At step four, the ALJ found that Plaintiff
could not perform past relevant work.  (R. at 22.)  At step five, the ALJ determined that Plaintiff
could perform jobs existing in significant numbers in the national economy.  (R. at 23.)
Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act.  (R. at 24.)

## IV.    ANALYSIS

Plaintiff, fifty-seven years old at the time of this Report and Recommendation, previously
worked as a housekeeper.  (R. at 36-40.)  She applied for Social Security Benefits, alleging
disability from back and left leg pain and high blood pressure with an amended alleged onset
date of March 1, 2013.  (R. at 40-41, 65, 180-95.)  Plaintiff's appeal to this Court alleges that
ALJ erred in assessing her mental impairments, in disregarding her need for a cane and in
assessing her subjective complaints of back pain.  (Pl.'s Mem. at 3-15.)  For the reasons that
follow, the ALJ did not err in her decision.

### A. The ALJ did not err in assessing Plaintiff's mental impairments.

Plaintiff offers four pillars of support for her assignment of error with respect to the
ALJ's assessment of her mental impairments:  (1) the ALJ erroneously found Plaintiff's mental
impairments as non-severe at step two; (2) the ALJ improperly discounted Plaintiff's Global
Assessment of Functioning ("GAF") scores; (3) the ALJ failed to conduct a more detailed mental

RFC assessment; and (4) the ALJ failed to have a psychiatrist or psychologist conduct a mental RFC assessment. (Pl.'s Mem. at 3-10.) With respect to all four, the ALJ did not err.

### i. The ALJ did not err in labeling Plaintiff's mental impairments as non-severe.

Plaintiff argues that the ALJ erred in labeling her mental impairments as non-severe. (Pl.'s Mem. at 7.) Defendant responds that substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 14) at 16.) As discussed below, the ALJ did not err in her severity assessment at step two.

At the second step of the ALJ's sequential analysis, a plaintiff must prove that she has a "severe impairment . . . or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Under the Act, a severe impairment entitling one to benefits must cause more than a minimal effect on one's ability to function. § 404.1520(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." § 404.1521(a).

The regulations require the ALJ to find the plaintiff not disabled at step two if she "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." § 404.1520(a)(4)(ii). Section 1509 requires that Plaintiff's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." § 404.1509. The plaintiff bears the burden of demonstrating that an impairment qualifies as severe. *Bowen v. Yuckert*, 482 U.S. 137, 146, 148 (1987).

When evaluating a claimant's mental impairments at steps two and three, the ALJ must follow the special-technique outlined in the regulation.  § 404.1520a(a); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  Under the special-technique regulation, if the ALJ determines that a mental impairment exists, she "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document her findings." *Patterson*, 846 F.3d at 659.  The ALJ must also document a specific finding as to the degree of limitation in each of the four areas of functional limitation:  (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation.  *Id.*  The ALJ must determine whether the claimant suffers from a severe mental impairment.  *Id.*  Then, the ALJ must determine if the severe impairment qualifies as a listed impairment.  *Id.*  If a severe impairment does not qualify as listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment limits the claimant's work abilities.  *Id.*

Here, the ALJ assessed the severity of two potential mental impairments:  depression and anxiety.  The ALJ concluded that Plaintiff's anxiety did not qualify as severe, because it did not cause more than minimal limitations in her ability to perform basic mental work activities.  (R. at 16-17.)  Likewise, the ALJ found that her depression did not qualify as severe, because it did not last longer than twelve months within the alleged onset date.  (R. at 18.)

### a. The ALJ did not err with respect to Plaintiff's alleged anxiety.

The ALJ followed the special technique when assessing Plaintiff's anxiety.  (R. at 16-17.) She documented specific findings as to all four areas of functional limitation set out in 20 C.F.R. § 404.1520a and § 12.00C of the Listing of Impairments.  (R. at 16-17.)  Relying on Plaintiff's reported daily activities, the ALJ found that Plaintiff had no limitation in her daily living.  (R. at

16.) Likewise, she found no limitation in the area of social functioning based on her reported activities. (R. at 16-17.) In the area of concentration, persistence or pace, the ALJ determined that Plaintiff had mild limitation. (R. at 17.) She based this on treatment notes from May and June 2014. (R. at 17.) As for the fourth area, the ALJ noted that Plaintiff had experienced no episodes of decompensation of an extended duration. (R. at 17.) Based on the above, the ALJ found that Plaintiff's anxiety did not qualify as severe. (R. at 18.) Substantial evidence supports this finding.

Plaintiff's objective medical records support the ALJ's conclusion with respect to Plaintiff's anxiety. On May 16, 2014, Angela Poythress-Lee, LPC, conducted a mental status exam of Plaintiff at Southside Community Services Board ("Southside Community"). (R. at 719.) Ms. Poythress-Lee found that Plaintiff exhibited no psychotic-like or antisocial behaviors. (R. at 721.) On May 29, 2014, Plaintiff visited Manjit Vohra, M.D., at Southside Community. (R. at 724.) Plaintiff denied any generalized anxiety symptoms, obsessive-compulsive symptoms, psychosis or hallucinations. (R. at 724.) Dr. Vohra determined that Plaintiff had not suggested any symptoms pointing to panic attacks. (R. at 724.) During a June 26, 2014 return visit, Dr. Vohra made the same findings with respect to Plaintiff's anxiety. (R. at 731.)

Plaintiff's daily activities also support a finding that she does not suffer from severe anxiety. Plaintiff completed an adult function report in 2012. (R. at 239-47.) She indicated that she cooked, cleaned, washed clothes and shopped. (R. at 239-42.) When going out by herself daily, she could walk, use public transportation and ride in a car. (R. at 242.) Plaintiff could count change, pay bills, handle a savings account and use a checkbook. (R. at 242.) She spent time with others and talked on the phone with others. (R. at 243.) She did not need someone to accompany her while she visited sick people or attended occasional social events. (R. at 243.)

8

Nor did she have any problems getting along with others. (R. at 244.) Plaintiff indicated that her anxiety prevented her from handling stress well, but she could handle changes in routine well. (R. at 245.) She had not noticed any unusual behavior or fears. (R. at 245.)

Plaintiff completed another function report in 2013. (R. at 256-63.) Plaintiff indicated that she took part in fewer activities outside of the home than on her 2012 function report. (R. at 256-63.) However, she generally attributed this to a deterioration of her physical capabilities. (R. at 256-63.) For example, she cooked less, because she could not stand as long. (R. at 258.) Also, she did not go out alone as much, because she could fall. (R. at 259.) However, she could still pay attention for a considerable amount of time and follow both written and spoken instructions particularly well. (R. at 261.) She indicated a better ability to handle stress and could still adapt to changes in routine. (R. at 262.)

Additionally, Plaintiff's testimony regarding her daily activities supports the ALJ's decision. Plaintiff testified that she helped care for her mother. (R. at 54.) Plaintiff further testified that she lived alone and fixed meals, washed clothes, swept and scrubbed the floors. (R. at 54-56.) She went out when she needed to go somewhere. (R. at 56.) She went to the grocery store with her cousins and had her friends take her to the doctor. (R. at 57.) Although Plaintiff testified to "not really" doing any social activities, she did play games and go on Facebook. (R. at 57.) These daily activities provide support for the ALJ's conclusion that Plaintiff's anxiety did not have more than a minimal effect on her daily living.

The reviews conducted by state agency doctors further support the ALJ's decision. State psychiatrist Leslie E. Montgomery, Ph.D., A.B.P.P., conducted a review of Plaintiff's records on August 28, 2012. (R. at 69.) Although Plaintiff reported occasional anxiety attacks, Dr. Montgomery found no documentation of treatment, medication or hospitalization for any

9

psychiatric condition. (R. at 69.) Additionally, Dr. Montgomery noted Plaintiff's normal psychiatric presentation during her doctors' appointments. (R. at 69.) Based on the lack of evidence, Dr. Montgomery found that Plaintiff had not established a mental medically determinable impairment. (R. at 69.)

State psychiatrist Stonsa N. Insinna, Ph.D., LCP, conducted another records review on March 15, 2013. (R. at 85.) Dr. Insinna noted that Plaintiff failed to document her reports of anxiety attacks or any signs or symptoms of a mental impairment that formed the focus of treatment. (R. at 85.) Dr. Insinna also relied on the lack of referrals to a psychiatric specialist in determining that no evidence of a medically determinable mental impairment existed. (R. at 85.)

In reviewing the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's anxiety does not constitute a severe impairment.

### b. The ALJ did not err with respect to Plaintiff's alleged depression.

The ALJ reviewed Plaintiff's complaints of depression and found that her depression did not constitute a mental impairment that had more than a minimal effect on her ability to perform basic work activities that has lasted at least twelve consecutive months. (R. at 17-18.) Substantial evidence supports this determination.

The medical records support the ALJ's decision to label Plaintiff's depression as non-severe. On January 24, 2014, Plaintiff visited VCU Health Systems complaining of mild depression. (R. at 493.) She stated that she occasionally had difficulty sleeping and experienced no changes in appetite. (R. at 493.) Plaintiff appeared alert, oriented and cooperative with an appropriate mood and affect. (R. at 496.) Denying suicidal ideations, she felt that she could cope with her symptoms on her own. (R. at 493.) Katherine Larson, M.D.,

diagnosed Plaintiff with situational depression stemming from her lack of work and chronic pain. (R. at 496.) Plaintiff declined medication and counseling. (R. at 496.)

On May 4, 2014, Plaintiff reported to Southside Community after overdosing on pain medications. (R. at 718.) Plaintiff denied that she ingested the pills as an attempt to commit suicide. (R. at 718.) Instead, she explained to Ms. Poythress-Lee, that she took them to alleviate her physical pain. (R. at 718.)

On May 16, 2014, Plaintiff returned to Southside Community and underwent a mental status exam. (R. at 719-23.) Ms. Poythress-Lee found Plaintiff well-groomed and alert with average insight, judgment, fund of information and abstract thinking. (R. at 721.) Plaintiff had some remote memory problems, but no psychotic-like behaviors. (R. at 721.) She did not pose a danger to herself or others and exhibited an appropriate attitude and affect. (R. at 721.) She exhibited no antisocial behavior. (R. at 721.) In addition to her sleep complaints, she experienced sadness, fatigue, poor concentration, and loss of interest or pleasure. (R. at 721.) Ms. Poythress-Lee diagnosed her with moderate major depressive order and assigned her a GAF score of 50. (R. at 721.) Plaintiff did not, however, meet the requirement for serious mental illness. (R. at 722.)

On May 29, 2014, Plaintiff returned to Southside Community, because her eating and sleeping habits had changed. (R. at 724.) Dr. Vohra conducted a mental status exam and found Plaintiff alert, oriented and cooperative. (R. at 724-25.) Plaintiff had a linear and goal-directed thought process. (R. at 725.) She denied hallucinations and suicidal or homicidal ideations. (R. at 725.) She had a depressed mood and flat affect. (R. at 725.) Dr. Vohra diagnosed Plaintiff with moderate, nonpsychotic recurrent major depressive disorder and assigned her a GAF score of 45. (R. at 725-26.) Dr. Vohra prescribed trazodone and Celexa for Plaintiff. (R. at 726.)

Then, in June 2014, Plaintiff's condition began to improve.  On June 26, 2014, Plaintiff returned to Southside Community.  (R. at 731.)  Again, Dr. Vohra diagnosed Plaintiff with moderate, nonpsychotic major depression.  (R. at 731.)  However, Plaintiff had responded "very well" to the medication and reported improvements in her sleeping and depression.  (R. at 731.) Likewise, Plaintiff testified during her hearing that the medication helped her depression and that she had no trouble sleeping.  (R. at 50-51.)  Additionally, the daily activities that undermined Plaintiff's allegations of anxiety, as discussed above, also support the ALJ's conclusion with respect to Plaintiff's depression.

The objective medical record supports the ALJ's conclusion that Plaintiff's depression would not have a more than minimal effect on her for more than twelve months.  Plaintiff first complained of mild depression in January 2014.  But, by June of that year, Plaintiff's depression had stabilized with the help of medication.  As such, Plaintiff presented evidence of depression from, at most, a span of six months, with signs that Plaintiff's depression had improved and responded well to medication.  Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's depression did not constitute a severe impairment.

### ii.  The ALJ did not err in discounting Plaintiff's two GAF scores.

Plaintiff next argues that the ALJ erred by giving Plaintiff's series of GAF scores from her treating doctors "little weight" when evaluating Plaintiff's purported mental impairment of depression.  (Pl.'s Mem. at 7.)  Defendant responds by pointing out that GAF scores have become obsolete and, nevertheless, cannot dispositively determine a disability.  (Def.'s Mem. at 23.)

The ALJ considered the GAF scores that Plaintiff's treating doctors had assigned, but gave them little weight.  (R. at 18.)  First, the ALJ noted that GAF scores provide only a

snapshot of functioning at the time of examination and do not reflect any functional limitations. (R. at 18.)  Furthermore, she found that Plaintiff's GAF scores of 45-50 would not necessarily preclude work.  (R. at 18.)  Finally, she determined that the GAF scores conflicted with the treatment records.  (R. at 18.)

The GAF represents a numeric scale (0 through 100) used by mental health clinicians and physicians to rate the social, occupational and psychological functioning of adults.  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).  "A GAF score is a snapshot of a person's functioning at a particular point in time, and is not a longitudinal indicator of the person's functioning." *Sutton v. Colvin*, 2016 WL 7426591, at *15 (E.D. Va. Nov. 29, 2016).  Notably, the latest version of the Diagnostic and Statistical Manual of Mental Disorders has eliminated the use of GAF scores, finding that their use faces criticism due to a "conceptual lack of clarity," and "questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).  Indeed, an ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Dunn*, 607 F. App'x at 267.

Here, the Court finds no reason to disturb the ALJ's decision to give the GAF scores little weight.  She sufficiently explained her reasoning for discounting the GAF scores.  (R. at 18.) First, she explained the problems with GAF scores generally.  (R. at 18.)  Then, despite her general reservations, she still considered these particular GAF scores, explaining that they

13

conflicted with the record.  (R. at 18.)  The evidence detailed above supports the ALJ's

conclusion that the GAF scores conflict with the record as a whole.  Therefore, the Court finds

that the ALJ did not err in discounting the GAF scores.

### iii.  The ALJ did not err by not conducting a more detailed mental RFC.

Plaintiff further argues that the ALJ erred by not conducting a more detailed mental RFC.

(Pl.'s Mem. at 5-6.)  Defendant responds that the ALJ had no obligation to conduct an additional

RFC.  (Def.'s Mem. at 19.)

The ALJ must assess a claimant's RFC in light of how a mental impairment constrains

her work abilities if the claimant has a severe mental impairment.  *Patterson*, 846 F.3d at 659.

But, the ALJ must consider even non-severe impairments if those impairments can limit the

claimant in combination with other impairments.  SSR 96-8p, 1996 WL 374184, at *5.

However, if the claimant does not allege a mental limitation or restriction of a specific functional

capacity, and the record does not demonstrate such a limitation, the ALJ must consider the

claimant to have no limitation with respect to that functional capacity.  *Id.*

In this case, Plaintiff did not allege any mental limitations in her applications for

disability or later disability reports.  (R. at 221, 248.)  Nevertheless, the ALJ still considered

whether Plaintiff's anxiety or depression resulted in any functional limitations.  (R. at 16-18.)  As

discussed above, she found that the record did not demonstrate that Plaintiff had any mental

impairment having more than a minimal effect on her work activities.  (R. at 18.)  Therefore, she

did not incorporate any functional limitations into the RFC.  (R. at 21.)

Plaintiff's argument regarding the RFC fails, because it presupposes that Plaintiff had

restrictions with respect to her mental functions.  But, the ALJ properly found that Plaintiff did

not have restrictions with respect to her mental functions.  Because substantial evidence supports

the ALJ's decision that Plaintiff did not have mental impairments that resulted in more than minimal limitations, *supra*, the ALJ did not err in excluding functional mental limitations from the RFC.

### iv. The ALJ did not err by not ordering additional psychological review.

Plaintiff's argument that the ALJ erred by not ordering that a qualified psychiatrist or psychologist complete an RFC assessment fails for similar reasons. Plaintiff argues that the ALJ erred, because the Commissioner must make every reasonable effort to see "that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." (Pl.'s Mem. at 6) (quoting 42 U.S.C. §421(h)). Defendant responds that the ALJ had no duty to seek a mental RFC assessment, because Plaintiff had no medically determinable mental impairment. (Def.'s Mem. at 21.)

First, two state agency psychologists reviewed Plaintiff's records. (R. at 69, 85.) On August 28, 2012, Dr. Montgomery found that Plaintiff had not established a mental medically determinable impairment. (R. at 69.) Likewise, on March 15, 2013, Dr. Insinna determined that no evidence existed supporting a medically determinable mental impairment. (R. at 85.) Because Plaintiff had no mental impairments, a mental RFC would have no foundation. *See* SSR 96-8p, at *2 ("[I]n assessing the RFC, the [ALJ] must consider only limitations and restrictions attributable to medically determinable impairments."). Of course, these two case reviews predate Plaintiff's mild depression diagnosis in January 2014, which could necessitate additional review. (R. at 496.) Thus, Plaintiff's recent diagnosis must support her assignment of error.

The ALJ did not err in determining that Plaintiff's recent diagnosis did not warrant additional review by the state agency psychologists. Within six months of her first complaints of depression, she had responded well to medication and her condition had stabilized. (R. at 731.)

15

Likewise, Plaintiff did not allege any functional limitations brought on by her depression in her testimony or her function reports. (R. at 54-57, 239-47, 256-63.) Plaintiff points to the diagnosis but offers no other evidence to support any functional limitations. (Pl.'s Mem. 5-6.) But a diagnosis, without substantiating objective medical evidence, will not suffice. 20 C.F.R. § 404.1521; *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."). With no evidence of any functional loss, the ALJ concluded that Plaintiff did not have a mental impairment that would have more than a minimal effect on her ability to perform work activities. (R. at 18.) As discussed above, substantial evidence in the record supports this conclusion. Because the ALJ properly determined that Plaintiff had no mental impairment, her refusal to order additional review by the state agency psychologists does not constitute error.

Substantial evidence supports the ALJ's decisions with respect to Plaintiff's purported mental impairments.

### B. The ALJ did not err in disregarding Plaintiff's use of a cane.

Plaintiff argues that the ALJ erred in assessing Plaintiff's need for a cane. (Pl.'s Mem. at 10.) Defendant responds that the ALJ did not need to consider Plaintiff's use of a cane, but she still did. (Def.'s Mem. at 24-26.)

The ALJ's RFC findings should include limitations that find support in the record. *Johnson*, 434 F.3d at 658. Use of a hand-held assistive device, like a cane, may affect an individual's RFC by limiting her ability to lift, carry, push and pull. *Fletcher v. Colvin*, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4)). However, the ALJ need only consider "medically required" assistive walking devices when making the RFC assessment. *Id.* (quoting SSR 96-9p).

16

To establish a medical requirement, the claimant must present medical documentation (1) supporting her need for an assistive walking device, and (2) describing the circumstances that require it. *Id.* The ALJ then "must always consider the particular facts of a case." *Wimbush v. Astrue*, 2011 WL 1743153, at *2 (W.D. Va. May 6, 2011) (quoting SSR 96-9p). Given the fact-specific nature of the ALJ's inquiry, neither a prescription for a cane, nor the lack thereof, necessarily determines whether the claimant medically requires an assistive device. *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)); *Wimbush*, 2011 WL 1743153, at *2-3 (citing SSR 96-9p) (additional citations omitted); *see also Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) ("The legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'"). The claimant must provide documentation from an approved medical source to establish the basis for her impairment and subsequent need for an assistive walking device. 20 C.F.R. § 416.913; *see also Jones v. Comm'r of Soc. Sec.*, 2011 WL 3273129, at *8-9 (E.D. Va. June 9, 2011) (finding that, under the regulations, a nurse practitioner did not qualify as an approved medical source for the purpose of establishing the existence of a medical impairment). If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment. *Fletcher*, 2015 WL 4506699, at *8. Courts have held claimants to a high burden in supplying the appropriate documentation. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (finding that the plaintiff did not meet the requirement of producing "an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Staples*, 329 F. App'x at 192 (finding that a doctor's statement that the plaintiff used a cane did not suffice to establish medical necessity).

17

Here, the ALJ found no evidence supporting Plaintiff's medical necessity to use a cane. (R. at 22.) Although Plaintiff had a prescription for a cane from Dr. Marcelo, the ALJ noted the lack of treatment records by Dr. Marcelo or supporting documentation showing that Plaintiff required the use of a cane. (R. at 22.) In fact, the ALJ requested additional information regarding Plaintiff's prescription for a cane and left the record open for Plaintiff to provide additional information, but she failed to do so. (R. at 22, 45-47, 63-64.) The ALJ's decision finds support in the record.

Other than a prescription for the cane, Plaintiff has provided no medical documentation to establish that she medically required a cane. Indeed, the record contains no other documents from Dr. Marcelo. Instead, her records from physical therapy support the ALJ's decision that she did not require a cane. On April 30, 2013, Plaintiff had her initial physical therapy evaluation at Community Memorial Healthcenter. (R. at 608.) Plaintiff made steady progress throughout her treatment. (R. at 601-706.) Then, on November 21, 2013, she completed her course of treatment, having reached her maximum level and met her goals, so the center discharged her. (R. at 610-12.) Her discharge summary indicates that the goals that Plaintiff met included that she could ambulate two miles with equal step length and equal cadence, tolerate eight to twelve hours on her feet without pain and balance in a single limb dynamic balance for ten seconds. (R. at 611.) Additionally, she could carry five to seven pound objects without foot pain. (R. at 611.) Furthermore, she could negotiate up and down eight-inch steps without a handrail. (R. at 611.) The physical therapist noted that Plaintiff could return to work tasks and community activity without restriction. (R. at 611.)

Plaintiff's testimony supports the ALJ's decision that she did not require a cane. Plaintiff testified that she needed a cane to help her walk, but that she could walk for thirty minutes before

18

needing to sit down. (R. at 47-48.) Plaintiff further testified that she could lift small items, like a

grocery bag or a gallon of milk, using both hands, and did not have as many issues when she sat.

(R. at 49-50.) Given the lack of supporting documentation and Plaintiff's stated abilities, the

ALJ did not err in deciding that Plaintiff did not medically require a cane.[2]

### C. The ALJ did not err in assessing the extent of Plaintiff's back pain.

Plaintiff also argues that the ALJ erred by finding that Plaintiff's back pain could not

produce the subjective symptoms that Plaintiff alleged. (Pl.'s Mem. at 13-14.) Specifically,

Plaintiff alleges that the ALJ erred in finding that an x-ray taken on May 4, 2013 did not provide

objective support for the extent of the symptoms alleged. (Pl.'s Mem. at 13-14.) Defendant

responds that the ALJ properly considered the evidence with respect to Plaintiff's back pain.

(Def.'s Mem. at 27.)

In evaluating a claimant's subjective symptoms of pain, the ALJ must follow a two-step

analysis. *Craig*, 76 F.3d at 594. The first step requires the ALJ to determine whether an

underlying medically determinable physical or mental impairment exists that reasonably could

produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at *5. After the

plaintiff has met this threshold obligation, the ALJ must evaluate the extent to which the pain

affects her ability to work. *Craig*, 76 F.3d at 595.

The caselaw firmly establishes that a claimant's subjective allegations of pain do not,

alone, prove that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir.

---

[2]    Assuming, *arguendo*, that the ALJ did err with respect to the use of a cane, the VE's
testimony rendered that error harmless. The VE testified that the use of a cane would have no
impact on any of the jobs named once the individual reached the work station. (R. at 62.)
Therefore, the ALJ's inclusion of a cane in the RFC would not have changed her ultimate
decision that Plaintiff could perform the jobs that she listed. *See Tanner v. Comm'r of Soc. Sec.*,
602 F. App'x 95, 101 (4th Cir. 2015) (finding an ALJ's error harmless, because it would not
change the ultimate finding of non-disability).

1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."  *Craig*, 76 F.3d at 591.

Here, the ALJ found that the medical evidence did not provide objective support for back pain that could reasonably produce the extent or intensity of Plaintiff's expression of subjective symptoms.  (R. at 16.)  The ALJ noted that Plaintiff only complained once of back pain, and "the medical record is devoid of any other complaints of back pain."  (R. at 16.)  Therefore, the ALJ determined that Plaintiff's back pain did not cause more than a minimal effect on her ability to perform basic work activities.  (R. at 16.)  Substantial evidence supports the ALJ's decision.

On May 3, 2014, Plaintiff visited the emergency room for lower back and hip pain.  (R. at 586-90.)  She returned the next day, after overdosing on pain medication, and underwent an x-ray.  (R. at 591.)  The x-ray revealed mild multilevel degenerative disc disease in her mid and lower lumbar spine, as well as mild to moderate facet osteoarthritis present bilaterally at the L5-S1 level.  (R. at 591.)  The record contains no other objective evidence regarding her back pain.

Plaintiff's testimony during the hearing supports the ALJ's decision.  Plaintiff testified that she did not have a doctor treating her for her back, but that she took pain medication every day.  (R. at 44.)  She also testified that she can walk for thirty minutes and stand for an hour before needing to sit down.  (R. at 47-48.)  Plaintiff's back hurts more when she stands for long periods of time, rather than when she sits.  (R. at 49-50.)  Additionally, Plaintiff testified that she could take care of personal needs, fix breakfast, attend doctors' visits, bathe, clean up around the house, do laundry and complete other household chores.  (R. at 54-56.)  Plaintiff also testified that she goes grocery shopping with her cousin.  (R. at 56-57.)

Plaintiff's daily activities, in conjunction with the lack of objective medical evidence, support the ALJ's decision that the stated extent of Plaintiff's back pain lacks support in the record. Therefore, the ALJ did not err by finding that Plaintiff's back pain did not preclude her from performing basic work activities.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 9) and Motion to Remand (ECF No. 10) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
_____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: June 30, 2017

21